IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 1, 2021 Session

**JAMES MORROW v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. P-24972     Chris Craft, Judge**

_____

**No. W2019-01488-CCA-R3-PC**
_____

In 1998, the Petitioner, James Morrow, was convicted of two counts of first-degree premeditated murder and sentenced to life imprisonment. The Petitioner appealed his convictions to this court, and we affirmed the judgments. *State v. James Morrow*, No. W1998-0583-CCA-R3-CD, 1999 WL 1529719 (Tenn. Crim. App., at Jackson, Dec. 29, 1999), *perm. app. denied* (Tenn. June 26, 2000). Subsequently, the Petitioner filed a petition for post-conviction relief, which the post-conviction court dismissed after multiple hearings. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR. and J. ROSS DYER, JJ., joined.

James Morrow, Tiptonville, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Amy P. Weirich, District Attorney General; Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts and Background**

This case originates from the Petitioner fatally stabbing his wife and son before he swallowed some cleaning products and called the police to report his actions. Based on this conduct, a Shelby County grand jury indicted the Petitioner for two counts of first-degree premeditated murder.

## A. Trial

The following is a summary of the facts presented at the Petitioner's bench trial:

On June 21, 1996, [the Petitioner] called 911 and told the operator that he had stabbed his wife and son to death, and that he had attempted to commit suicide. Police, responding to the call, arrived at the [Petitioner's] house and found both the [Petitioner's] wife, Velma, and his son, Jerrell, dead as the result of multiple knife wounds. The [Petitioner] was severely injured. Medical personnel arrived shortly thereafter and transported the [Petitioner] to a hospital where he was treated for multiple self-inflicted knife wounds and the apparent ingestion of a household cleaning solution.

Two days later, police officers questioned the [Petitioner] at the hospital. After waiving his Miranda rights, the [Petitioner] told the police that he had killed his wife and son because he was suffering from delusions at the time. This statement was typed by the police and signed by the [Petitioner].

The [Petitioner] was indicted in December, 1996, and the trial court ordered a psychiatric evaluation to determine whether the [Petitioner] was competent to stand trial. Dr. Wyatt Nichols, a clinical psychologist, found that although the [Petitioner] was competent to stand trial, he was insane at the time of the killings. The state proceeded to hire a second psychologist, Dr. Edward Wise. After conducting several interviews with the [Petitioner] and researching the [Petitioner's] medical background, Dr. Wise concurred with Dr. Nichols'[s] earlier result.

On April 8, 1998, the [Petitioner] waived his right to a jury trial, and a bench trial commenced. First, the State Medical Examiner testified that although both victims died from multiple stab wounds, they each probably remained alive for some time while being stabbed. Next, a police officer who arrived on the scene testified that the [Petitioner] calmly asked the officer to shoot him and became angry when the officer did not. The officer who questioned the [Petitioner] in the hospital testified that the [Petitioner] waived his Miranda rights and voluntarily confessed to the murders. After this testimony, the state rested.

The defense called Dr. Nichols, who testified that in his opinion the [Petitioner] was insane at the time of the homicides. After a thorough cross-examination, however, Dr. Nichols admitted that the killings could have been the result of jealousy, not insanity. The defense then called Dr. Wise to testify. Unfortunately, Dr. Wise's schedule conflicted with the court's, and

the remainder of the trial was rescheduled to accommodate Dr. Wise's schedule.

The trial did not resume until July 6, 1998, almost three months later. During the recess, the [Petitioner] and his attorney apparently had a disagreement. Both the [Petitioner] and his attorney filed separate motions asking the trial court to allow the defense counsel to withdraw and to appoint new counsel. When the trial resumed, the court denied those motions, and the defense continued presenting its case.

The defense called Dr. Wise who testified that he, too, was of the opinion that the [Petitioner] was insane at the time of the commission of the offenses. On cross-examination, Dr. Wise rejected the hypothesis that the killings were a result of the [Petitioner's] jealousy. The defense then rested.

In rebuttal, the state called seven (7) witnesses to rebut the experts' conclusions that insanity, not jealousy, precipitated the crime. All of these witnesses testified to seeing and/or hearing specific instances of the [Petitioner's] jealous, controlling behavior before the killings took place. The trial court convicted the [Petitioner] and sentenced him to two concurrent life sentences.

*Morrow*, 1999 WL 1529719, at *1-2.

## B. Post-Conviction Proceedings

In 2001, the Petitioner filed his initial petition for post-conviction relief, *pro se*, alleging multiple bases for relief, including that he received the ineffective assistance of counsel. It appears that the Petitioner, over the course of eighteen years, has filed many amended petitions and additional motions, including motions to recuse multiple trial judges. These numerous filings and resulting hearings, at times with assistance of elbow counsel in light of the Petitioner's insistence that he proceed *pro se*, caused hearing dates for the petition itself to be reset multiple times from 2001 to 2016. The post-conviction court, at several points, found the Petitioner's actions to be an intentional obstruction of the proceedings.

In December 2016, a post-conviction hearing was held at which the Petitioner, representing himself with elbow counsel, testified that he was alleging the ineffective assistance of counsel by attorney at trial ("trial counsel"). He testified that he had been evaluated for insanity prior to trial and that two doctors had determined that he was not guilty by reason of insanity. The Petitioner provided documentation of the doctors' reports. The Petitioner testified that his trial counsel had informed him that, based on an agreement with the State and the trial court, the State had "conceded" that he was not guilty by reason

3

of insanity. Thus, there would be no need for a jury trial, so the Petitioner waived his right to a jury trial. The Petitioner testified that once his trial began, it was apparent that he would not certainly be acquitted, at which point he filed *pro se* motions to withdraw his waiver, to substitute his counsel, for a change of venue, and to recuse the trial judge. A copy of the motion to withdraw his waiver of a jury trial, dated May 22, 1998, was admitted into the record as evidence. He testified that the trial court denied all four motions without questioning him or giving him a chance to show, for example, "good cause" for substitution of counsel. The Petitioner testified that his trial counsel failed to object or appeal the trial court's failure to have a hearing on the Petitioner's motions.

The Petitioner stated that trial counsel reminded the trial court that it had stipulated to the doctors' opinions about the Petitioner's insanity and that trial counsel had agreed to a bench trial because it was "supposedly cut and dry" that the Petitioner was not guilty. These statements confirmed the Petitioner's allegation that trial counsel induced him to waive his right to a jury trial. But for trial counsel's advice, the Petitioner would not have waived his right to a jury trial. Trial counsel told him that "as a matter of law" the trial court and the State had agreed that he was not guilty by reason of insanity. Trial counsel advised him that the trial court had "no other choice" and that the agreement was "cut and dry." The Petitioner testified that trial counsel should have objected to the trial court's failure to abide by the agreement, and then trial counsel should have appealed the trial court's decision to deny his motion to withdraw his waiver of a jury trial.

The Petitioner testified that trial counsel did not prepare for trial, did not contact any witnesses, and never entered any medical evidence into the record. The Petitioner provided a list of witnesses mentioned in the doctors' reports, who trial counsel should have contacted. He testified that the witnesses were unable to attend the post-conviction hearing.

In a September 2017 post-conviction hearing, trial counsel testified that she was employed by the Shelby County Public Defender's Office at the time of the Petitioner's trial and was appointed lead defense counsel in this case. Trial counsel agreed that she filed a notice of insanity defense and entered a plea of not guilty by reason of insanity on behalf of the Petitioner. Trial counsel agreed that, in her opening argument, she argued that she would present evidence and proof of the Petitioner's insanity via witnesses' testimony and medical records. She recalled meeting with the court-appointed doctors who ultimately declared that the Petitioner was not guilty by reason of insanity. She testified that no lay witnesses were called in addition to the doctors because their lay testimony with regard to his mental capacity was not necessary, in light of the expert testimony. Trial counsel was aware that the defendant bore the burden of proving the insanity defense. With regard to failing to bring in lay witnesses, trial counsel stated that the doctors had spoken to many of them and that, ultimately, the lay witnesses presented potentially harmful testimony that the Petitioner had acted out of jealously instead of insanity.

Trial counsel agreed that she received the Petitioner's medical records, including

psychiatric records. She agreed that she listed the medical records and other witnesses' testimony as purported evidence in her opening argument but ultimately that evidence was not presented at trial. Trial counsel contended, however, that all relevant evidence with regards to the Petitioner's medical and psychiatric records, as well as any relevant evidence from lay witnesses, was presented to the trial court by way of the doctors' reports and testimony. Trial counsel could not recall if paper medical records were presented to the trial court.

Trial counsel acknowledged that she had a duty to represent the Petitioner at trial, and she stated that she went "above and beyond" in a "zealous" effort to do so. She had been practicing criminal law for nine years at the time of his trial. She recalled that one of the doctors who testified was initially a rebuttal witness obtained by the State who ultimately agreed with the defense expert. Trial counsel recalled that she consulted "extensively" with the Petitioner about his decision to proceed with a bench trial and waive his right to a jury trial. Trial counsel "wanted" a jury trial and prefers them; thus, she spoke extensively with the Petitioner about his options and the "pros and cons" of having a bench trial versus a jury trial. The Petitioner expressed to her that the two doctors' expert testimony meant that he would be acquitted and, thus, he wished to proceed with a bench trial.

Trial counsel recalled her argument at the motion for new trial that the Petitioner be allowed to withdraw his waiver and pursue a jury trial. Trial counsel felt that the breakdown in her relationship with the Petitioner, related to their conflict over waiving the jury trial and his ultimate change of heart, meant that it was in the Petitioner's best interest that trial counsel withdraw her representation and that the Petitioner be allowed to proceed with a jury trial. Trial counsel clarified that pretrial stipulations were made between the parties as to the facts surrounding the Petitioner's mental health but that the trial court had not been bound by those stipulations. The trial court elected to hear the doctor's testimony, which had been stipulated to, regardless of the agreement, and the Petitioner's trial was continued to allow for that in-person testimony.

Trial counsel agreed that the Petitioner filed a motion requesting that she withdraw from the case, which the trial court denied. She was in agreement with the Petitioner's motion because of their communication breakdown. The motion was denied without a hearing. Trial counsel agreed that she did not challenge or appeal this ruling.

Trial counsel recalled speaking to some of the lay witnesses the Petitioner provided to her. The witnesses did not mention the Petitioner's mental illness, only his bad relationship with his wife, and, thus, trial counsel did not want to call them to testify at trial. The witnesses could not speak to the Petitioner's mental illness or insanity with any great weight, in light of the experts' opinions. Trial counsel recalled that at some point the Petitioner was subject to a custodial interrogation, and she sought suppression of his resulting statement, as a matter of practice.

5

Trial counsel recalled that the Petitioner submitted to her his own motion for new trial, she in turn prepared one, and the trial court considered all the issues raised by each. She stated that she did not argue the Petitioner's issues, which asserted she had not represented him properly because she did not agree.

At the next hearing date in January of 2019, the Petitioner's sister, Vanilla Burks, testified that she met with trial counsel, who advised her that the Petitioner's case would not proceed to trial as there was "no need" for one. Ms. Burks recalled that trial counsel said the trial court would not impose a prison sentence on the Petitioner but instead send him to a "mental institution." Ms. Burks testified that trial counsel insisted upon this fact "several times" and advised the Petitioner to waive his right to a jury trial accordingly. Ms. Burks met with trial counsel two or three times and was present at the Petitioner's bench trial. Ms. Burks indicated to trial counsel her willingness to testify at the Petitioner's trial. Ms. Burks agreed that she had signed an affidavit stating that trial counsel had told her the Petitioner would be sent to a psychiatric hospital and that the trial court would not allow a jury to convict the Petitioner.

At the conclusion of the proof, in an order, the post-conviction court addressed nine of the Petitioner's post-conviction relief claims, including his claim that he had received the ineffective assistance of counsel, finding them all to be without merit. Specific to the Petitioner's claim in this appeal that he received the ineffective assistance of counsel, the post-conviction court made the following findings:

> *4. The denial of the [P]etitioner's right to a jury trial.*
>
> On April 8, 1998, prior to the start of the bench trial, the [P]etitioner was voir dired by the judge, who read the signed waiver, which is filed in the technical record, read it to him, explained it to him . . . . His attorney put on the record at that time that he had been found competent, and he stated that he was only on medication for back problems and esophagus problems, which did not affect his ability to understand what was taking place and he was able to follow everything clearly.
>
> The [P]etitioner admitted during the hearing that he had signed the waiver, but testified that [trial counsel] tricked him into waiving because she guaranteed that he would be found not guilty by reason of insanity. [Trial counsel], on the other hand, testified that she talked to the [P]etitioner extensively about this issue because she did not want him to waive his right to a jury trial, but the [P]etitioner insisted on a bench trial. She testified that "I was adamant about having a jury trial, but you were pretty headstrong at that time and wanted to have a bench trial." When he changed his mind later, after they had already begun, she asked to withdraw because she was

6

"pissed." "You were difficult to deal with. You were a man who was pushy." This court finds [trial counsel's] testimony very credible and the [P]etitioner's testimony incredible and finds that the [P]etitioner freely and voluntarily waived his right to a jury trial.

5. *The denial of effective assistance of counsel at trial and on appeal, and that the trial judge failed to hold inquiries into "the [P]etitioner[']s detailed and numerous complaints of the factual conflicts of interest that existed between the [P]etitioner and his court appointed attorney" and that his appellate counsel failed to raise this violation of his Due Process rights on appeal.* Specific allegations are discussed below. As to this general allegation, our courts have held that claims of ineffective assistance of counsel are generally more appropriately raised in a petition for post-conviction relief rather than on direct appeal. *See State v. Carruthers*, 35 S.W.3d 516, 551 (Tenn. 2000); *see also State v. Anderson*, 835 S.W.2d 600, 606 (Tenn. Crim. App. 1992) ("Raising issues pertaining to the ineffective assistance of counsel for the first time [on direct appeal] in the appellate court is a practice fraught with peril."). This court finds that raising these issues at trial are even more fraught with peril. The judge cannot have hearings on these types of issues during trial, because a defendant would have no access to counsel to raise these allegations for him, and no way to fully develop a record for appeal. [Trial counsel] denied that she was ineffective, and testified that she did not argue the [P]etitioner's pro se motion for that very reason. She would have been arguing a position she did not agree with. This allegation has no merit.

. . . .

7. *Trial counsel was ineffective for the following:*

a) *advising [the P]etitioner to waive his constitutional rights to a jury trial, therefore [P]etitioner's waiver of jury was not knowingly, voluntarily or intelligently made.* This allegation has already been found to be factually false and without merit in the analysis of allegation 4, *supra*.

. . . .

f) *ineffective during motion for new trial.* The only proof offered that [trial counsel] was ineffective during the motion for new trial was that she admitted that although she included all of the suggested error in the motion, she did not orally argue some of the allegations during the hearing on the motion. There is no requirement that every allegation in a motion for new trial must be orally argued. The judge must consider it if it is raised at all in

7

the motion. A reading of the presentation of the motion for new trial by [trial counsel], both the one she filed and his pro se motion, seems to this court to be thorough and heart-felt, and not at all perfunctory or presented in a routine manner, as some of the motions for new trial this court has heard seem to be often presented. She testified that she could not argue that part of the [P]etitioner's motion stating that she did not do something when she felt that she did. The [P]etitioner has offered no proof that had any specific allegation been argued, it would have met with success. This court can find none.

The post-conviction court further stated:

Although this court did not wish to restrict the [P]etitioner's right to put on further proof, after having put up with over a decade of clear abuse of process by the [P]etitioner, which produced no credible proof of the truth of the allegations of his multiple petitions, but only repetitive, obstructionist motions which contained no truth or merit year after year, it became crystal clear to this court that this purposeful abuse of our legal system by the [P]etitioner must come to an end.

The post-conviction court dismissed the Petitioner's petition as having no legal or factual merit. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it: (1) denied him a full and fair post-conviction hearing; (2) barred him from making a closing argument at the post-conviction hearing; and (3) violated his right to subpoena witnesses to the post-conviction hearing. He additionally contends that he received the ineffective assistance of counsel because his trial counsel: (1) erroneously induced him to waive his right to a jury trial; (2) failed to appeal the trial court's denial of his motion to substitute counsel and failed to argue this issue at his motion for new trial; (3) failed to submit his medical records at trial; and (4) failed to "follow through" on "promises" trial counsel made during opening argument. The State responds that the post-conviction court properly dismissed the petition, for what the State argues is the Petitioner's failure to prosecute and because the Petitioner had been given a full and fair opportunity to be heard on the petition. The State additionally argues that the Petitioner has not carried his burden of showing that he received the ineffective assistance of counsel. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). The post-conviction court's findings of fact are conclusive

8

on appeal unless the evidence preponderates against it. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely *de novo* review by this court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

## A. Post-Conviction Hearing

The Petitioner contends that the post-conviction court denied him a timely full and fair post-conviction hearing. The State responds that the post-conviction court properly dismissed the petition, and that the post-conviction court did not deny the Petitioner a full and fair hearing. The Petitioner also contends that the post-conviction court erroneously limited his closing argument and right to subpoena witnesses at the hearing. The State

9

responds that the Petitioner did not have a constitutional right to present a closing argument and that the post-conviction court gave the Petitioner ample opportunity to present his witnesses. We agree with the State.

Generally, "[r]elief under [the Post-Conviction Procedure Act] shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. "All that due process requires in the post-conviction setting is that the defendant have the opportunity to be heard at a meaningful time and in a meaningful manner." *Stokes v. State*, 146 S.W.3d 56, 61 (Tenn. 2004) (internal quotation marks and citations omitted). Moreover, a petitioner who has received a "full and fair" post-conviction hearing is not entitled to a second hearing. *See Corey Mitchell v. State*, No. W2016-01818-CCA-R3-PC, 2018 WL 3005379, at *5 (Tenn. Crim. App. at Jackson, June 14, 2018). Our supreme court has held that a petitioner was afforded a "full and fair" hearing when an evidentiary hearing was held, the petitioner was afforded every opportunity to present evidence and argument at the hearing, the trial record was introduced into evidence, and "the trial judge determined from that record and the argument of counsel, that the allegations were without merit." *House v. State*, 911 S.W.2d 705, 711 (Tenn. 1995). Additionally, an indigent criminal defendant may be deemed to have forfeited the constitutional right to trial counsel when he or she "engages in 'extremely serious misconduct,' or engages in an 'egregious manipulation' of the right to counsel 'so as to delay, disrupt, or prevent the orderly administration of justice.'" *State v. Holmes*, 302 S.W.3d 831, 838 (Tenn. 2010) (quoting *State v. Carruthers*, 35 S.W.3d 516, 548-50 (Tenn. 2000).

The decision to grant a motion for a continuance, to allow for the further presentation of evidence, is left to the post-conviction court's discretion, and a denial of the requested continuance will not be overturned on appeal absent a clear showing of an abuse of that discretion. *State v. Russell*, 10 S.W.3d 270, 275 (Tenn. Crim. App. 1999) (citing *State v. Melson*, 638 S.W.2d 342, 359 (Tenn. 1982); *Baxter v. State*, 503 S.W.2d 226, 230 (Tenn. Crim. App. 1973)). We will reverse the denial of a continuance only if the trial court abused its discretion and the petitioner was prejudiced by the denial. *State v. Thomas*, 158 S.W.3d 361, 392 (Tenn. 2005).

The record is replete with opportunities the Petitioner had to be heard and present evidence and arguments to the post-conviction court; indeed, the post-conviction made every effort to give the Petitioner an opportunity to be heard in a meaningful manner. The hearings were continued multiple times to allow the Petitioner to subpoena his witnesses or present evidence of his arguments. We count approximately twenty hearings on this petition at which the Petitioner was permitted to present evidence. Accordingly, we conclude that the post-conviction court afforded the Petitioner the opportunity to present arguments on his petition and present witnesses; therefore, the post-conviction court did not abuse its discretion when it dismissed the petition. This allegation is without merit.

## B. Ineffective Assistance of Counsel

The Petitioner claims that trial counsel was ineffective for: (1) erroneously inducing him to waive his right to a jury trial; (2) failing to appeal the trial court's denial of his motion to substitute counsel and failing to argue this issue at his motion for new trial; (3) failing to submit his medical records at trial; and (4) failing to "follow through" on "promises" trial counsel made during opening argument. The State responds that the post-conviction court properly denied relief on these claims. We agree with the State.

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

### 1. Waiver of Jury Trial

The Petitioner contends that trial counsel tricked him into waiving his right to a jury trial on a false promise that he would receive no jail time. Relative to this claim, the post-

conviction court accredited trial counsel's testimony that she urged the Petitioner to seek a jury trial and not a bench trial. Conversely, the post-conviction court discredited the Petitioner's testimony that she advised him to have a bench trial. We reiterate that all questions concerning the credibility of witnesses are to be resolved by the lower court, not the appellate courts. *See Momon*, 18 S.W.3d at 156.

The evidence does not preponderate against the post-conviction court's findings. Trial counsel testified that she and the Petitioner discussed extensively the decision about whether or not to proceed with a jury trial. Trial counsel recalled that she preferred jury trials and advised the Petitioner to proceed with a jury but he was insistent on a bench trial. Indeed, trial counsel testified that she advocated for the Petitioner's withdrawal of the waiver to be granted at the motion for new trial hearing. The Petitioner has not shown that trial counsel was ineffective in this regard. Accordingly, the Petitioner is not entitled to relief with regard to this claim.

## 2. Motion to Substitute Counsel at Trial

The Petitioner claims that trial counsel was ineffective for failing to appeal his motion to have her withdraw her representation of the Petitioner. The post-conviction court found this allegation to be without merit. The evidence does not preponderate against this finding. The evidence presented at the post-conviction hearings was that trial counsel did in fact advocate to be relieved of representing the Petitioner and her request, as was his, was denied by the trial court. It was within the trial court's discretion to deny the request for her to withdraw. Trial counsel agreed that she did not appeal the trial court's ruling denying her withdrawal as counsel, however, absent an abuse of discretion, it is unlikely that her doing so would have resulted in a different outcome on this issue. *See State v. Branam*, 855 S.W.2d 563, 566 (Tenn.1993) (The trial court's decision on withdrawal in a pending criminal matter rests within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion); *see also State v. Russell*, 10 S.W.3d 270, 274 (Tenn. Crim. App. 1999). The Petitioner is not entitled to relief on this issue.

## 3. Medical Records

The Petitioner claims that trial counsel was ineffective for failing to present his medical records as evidence at his trial. The post-conviction court found this allegation to be without merit. Trial counsel testified that the two doctors who examined the Petitioner included the contents of his medical records in their reports, thereby alleviating the need to introduce the records at trial. We will not second-guess the decision by trial counsel not to introduce the paper medical records, particularly in light of their cumulative nature. The Petitioner is not entitled to relief on this issue.

## 4. Opening Argument

The Petitioner contends that trial counsel failed to deliver on several "promises" she made during opening argument, including the presentation of the medical records and lay witnesses' testimony. The post-conviction court found this allegation to be without merit. The evidence established that trial counsel did not follow through on those particular aspects of her opening argument because she did not think they would be beneficial to the Petitioner's case. This tactical decision was made in light of the fact that the medical records were included in the doctors' voluminous reports, and in light of the fact that lay witnesses would potentially testify that the Petitioner had murdered his wife out of jealously instead of insanity. Such strategic or tactical decisions are given deference on appeal if the choices are informed and based upon adequate preparation. *See Goad*, 938 S.W.2d at 369; *see also Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The Petitioner is not entitled to relief as to this issue.

### III. Conclusion

After a thorough review of the record and the applicable law, we conclude that the post-conviction court properly dismissed the Petitioner's petition for post-conviction relief. In accordance with the foregoing reasoning and authorities, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE